# IN THE UNITED STATES DISTRICT CORT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

## CIVIL ACTION

_____
(Case Docket Number)

**JURY TRIAL DEMANDED**
**CLASS ACTION**
**CERTIFICATION SOUGHT**
Pursuant to Fed.R.Civ.P. 23(a)

**RECEIVED**
MAR 29 2018
CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

---

# CARL LANE
1021 South 4th Street, Suite 1907
Philadelphia, Pennsylvania 19147
**Plaintiff,**

v.

# SAM ASH MUSIC CORPORATION
(a.k.a. SAM ASH MUSIC STORES)
278 Duffy Avenue
Hicksville, NY 11802-9047
**Defendant.**

---

**RACKETEERING INFLUENCED** and
**CORRUPT ORGANIZATION ACT,**
**(CIVIL RICO, 18 U.S.C. §1962**

**DIVERSITY OF CITIZENSHIP JURISDICTION,**
**28 U.S.C. §1332(a)**

**FEDERAL QUESTION,**
**28 U.S.C. §1331**
**CLASS ACTION**

# COMPLAINT

## I. INTRODUCTION

1.   Plaintiff **Carl Lane**, individually and on behalf of all others similarly situated, brings this action as a class pursuant to Fed.R.Civ.P. 23, and under the CIVIL RICO ACT, 18, U.S.C. §1962, et seq., alleging that Defendant engaged in, and so continue to engage in and operate a corrupt organization by undertaking a pattern of racketeering activities through fraud, i.e. deceptive business practices by way of false advertisement; thus giving rise to the common law tort claim of unjust enrichment; seeking damages, costs, and other relief against Sam Ash Music Corporation ("SAMC") for its unjust and unreasonable conduct from January 1, 2013 through to the present ("the Class Period"). During the Class Period, SAMC intentionally failed to disclose its policy which considers inmate ineligible to receive with their eligible purchases SAMC's ULTRA PREMIUM KEYBOARD PACKAGE ("UPKP")[1], by unlawfully withholding same which was lawfully owned by the Plaintiff, and the Class; selling same for the sole financial enrichment of SAMC without knowledge or consent of the Plaintiff or the Class, and without credit, compensation or other consideration of monetary value to the Plaintiff, or to the Class.

## II. PARTIES

2.   Plaintiff, Carl Lane, is a resident of the Commonwealth of Pennsylvania.

3.   Defendant SAMC is an incorporated business entity headquartered in Hicksville, New York; there selling various musical instruments, accessories and gear via 95 Sam Ash Music Stores and affiliate establishments located throughout the United States, and through catalog mail-order from its central warehouse in Hicksville, NY, and via its website.

---

[1]   The UPKP comprises four (4) items: Keyboard Stand, Sustain Pedal, Headphone, and AC Power Adapter.

## III. <u>JURISDICTION</u>

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 because this matter involves a federal question, i.e., whether Defendant SAMC violated the CIVIL RICO STATUTE, 18 U.S.C. §1962.

5. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. §1332(d) as the amount in controversy exceed $5 million, exclusive of interest and costs, and because at least one Class Member is a citizen of a state other than that of Defendant SAMC.

6. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over the Plaintiff's state law tort claim of unjust enrichment because it arises from a common nucleus of operative facts and such that the Plaintiff ordinarily would expect to try both it and the claim involving a federal question in one judicial proceeding.

## IV. <u>VENUE</u>

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), in that Defendant SAMC transacts substantial business within, and is thus subject to personal jurisdiction in this District; as it thus "resides" in this District for purposes of venue which is also proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## V. <u>PREVIOUS LAWSUITS</u>

8. None. Plaintiff is not a party to any pending or terminated litigation against the Defendant or any affiliate involving any set of facts as alleged herein.

## VI. PRELIMINARY STATEMENT

A. Date and Place of Events

9. The herein described events giving rise to this Complaint occurred from June 9, 2016, through to the present; in the County of Fayette, Pennsylvania, at the State Correctional Institution at Fayette ("SCI-Fayette), where at all times relevant to this class action litigation the Plaintiff was confined as an inmate of the Pennsylvania Department of Corrections ("PA DOC").

---
THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK

## VII. STATEMENT OF THE FACTS

A. Plaintiff's Individual Factual Allegations

10. On June 9, 2016, in response to Plaintiff's inquiry expressing interest in purchasing an electronic keyboard, the Plaintiff received Defendant SAMC's catalog from Larry Nitka, employed by SAMC as Manager, Sales Analysis & Special Projects.

11. Among various musical instruments, accessories, equipment and gear, said catalog advertises that included with nearly all (DOC-approved)[2] keyboards offered is an UPKP.

12. Enticed by the free-UPKP-with-keyboard-purchase deal, the Plaintiff decided to purchase the PA DOC-approved, UPKP-eligible, Yamaha PSR-E453 61-key portable keyboard.

13. On June 20, 2016, with funds from his inmate account, the Plaintiff mailed to Defendant SAMC an institution check in the amount of $281.98 to purchase said keyboard (and dust cover, for $16.99), and to receive the free UPKP.

14. Defendant SAMC offers free shipping/handling on orders of $100.00 and over.

15. Directly due to the aforesaid advertisement offering an AC Adapter as included in the included UPKP, the Plaintiff did not also order an AC Adapter, as he fully expected that same would be shipped with said order, in the UPKP.

16. On July 18, 2016, the Plaintiff received a 7/11/16 dated letter from SAMC Manager Larry Nitka, who cryptically informed Plaintiff that his order total is not $281.98, but $291.98.

---

[2] The PA DOC has an established list of Approved Venders" from which inmates may purchase certain DOC-authorized merchandise. Defendant SAMC is 1 of 12 DOC-approved venders, the only Approved Vender from which inmates may purchase a keyboard, a guitar, and related accessories, equipment and gear.

17. On August 24, 2016, the Plaintiff mailed to Defendant SAMC an additional $10.00 to cover the balance Mr. Nitka indicated was due on said order.

18. On behalf of Defendant SAMC, in his said July 11th dated letter, Mr. Nitka intentionally omitted notice to the Plaintiff that SAMC considers inmates ineligible to, by any means, receive the UPKP or any item thereof; failing to advise SAMC's policy and practice of withholding sending the UPKP to PA DOC inmates with their eligible purchases, and of selling same for the sole enrichment of SAMC; without any compensation, credit or other consideration to the inmate in lieu of the UPKP.

19. Rather than make any such disclosure, in his said July 11th letter, Mr. Nitka simply stated that "[he] would NOT recommend the Premium Package offered in the Guild as the DOC will not allow the Stand so you would be paying for something you would'nt get[.]"

20. The aforesaid un-recommendation was wholly insufficient to alert Plaintiff that SAMC would not be shipping the UPKP to Plaintiff with the UPKP-eligible order.

21. On September 2, 2016, the Defendant shipped to the Plaintiff his aforesaid order without the UPKP.

22. On September 7, 2016, said UPKP-less order was delivered to SCI-Fayette; which, per established policy, promptly engraved Plaintiff's name and PA DOC inmate number on the keyboard, making it unreturnable to SAMC for a full refund.

23. On September 15, 2016, the Inmate Property Sergeant, Sgt. M. Pierce, called-out the Plaintiff to the Property Room to pick-up his order. The Plaintiff immediately noticed and complained about absence of the UPKP, and was particularly concerned about the missing/withheld AC Adapter needed to power the keyboard.

24. The Plaintiff did not also order an AC Adapter because he fully expected same to be included in the UPKP which he completely expected would be shipped with the keyboard, per Defendant's catalog advertisement. Had he understood otherwise, he would have simultaneously purchased the AC Adapter, and saved himself the $5.95 shipping & handling cost for the separate order.

25. So, at 9:30am, Sgt. Pierce immediately phoned 516-932-6400, ext. 123, and spoke with Mr. Nitka who responded that SAMC does not send the UPKP to DOC inmates whom are not allowed 3 of the 4 items, the only permitted item being the AC Adapter which, according to Mr. Nitka, SAMC does not remove from the UPKP; further explaining that inmates must therefore purchase an AC Adapter - the same AC Adapter included in the withheld UPKP.

26. Mr. Nitka further clarified SAMC's position that: an AC adapter is NOT included with said keyboard, despite the catalog's advertisement. Rather, the item is included in the UPKP which is NOT shipped to inmates - despite known fact that they are allowed to purchase and posses that very same item which is regularly ordered by those same DOC inmate customers.

27. While PA DOC inmates are prohibited from having (within the facility) all of the UPKP items (except for the AC Adapter), such items were and so remains the property of Plaintiff who had options, per DOC policy/practice, to: 1) instruct the facility to, at inmate's expense, return any prohibited items to the sender; 2) at his expense direct the facility to ship such prohibited item(s) to his home address, sign form directing facility to "destroy" the item(s); or 4) take no action, in which instance the prohibited property is "destroyed" within 15 working days.

28. The Plaintiff would have, at his expense, opted to have those three prohibited UPKP items shipped to his home address, while keeping the clearly allowed AC Power Adapter.

29. Alternatively, Defendant SAMC could have, as it was obliged to, afford the Plaintiff the option of including with his order $5.95 to cover shipping/handling costs to have those 3 DOC-prohibited items shipped from SAMC to the Plaintiff's home address; while shipping the permitted AC Adapter with said UPKP-eligible keyboard purchase.

30. Defendant SAMC refused and continues to refuse to afford the Plaintiff such an option; and also refusing to ship the entire UPKP to the Plaintiff's home address.

31. The Plaintiff's purchase was partially induced by Defendant SAMC's catalog advertisement offering an UPKP as included with his order of said UPKP-eligible keyboard purchase.

32. Defendant SAMC was and is without lawful justification for keeping the Plaintiff's UPKP, and then selling said 3 prohibited items, and selling the withheld AC Adapter back to the Plaintiff.

33. The aforesaid unlawful and unreasonable acts of the Defendant necessitated that the Plaintiff subsequently expend $25.94 to the Defendant in a separate order for the very same AC Adapter, i.e., the YPA 130 AC Yamaha Keyboard Power Adapter, which Defendant SAMC sold back to the Plaintiff (for $19.99 + $5.95 S/H).

## VIII. DEFENDANT'S UNLAWFUL CONDUCT

34. Defendant Sam Ash® Music Corporation has engaged, and so continues to engage in corrupt organizations practices; by engaging and a pattern and practice of racketeering activities targeted against a specific, definable class of customers, i.e., inmates; primarily through fraudulent business practices, by way of deceptive advertisements, claiming to include as free an ULTRA PREMIUM KEYBOARD PACKAGE with certain electronic keyboards, but intentionally and maliciously failing to deliver the UPKP which Defendant then sells for the sole financial enrichment of SAMC without knowledge or consent of, or compensation to, the inmate customer, to include the Plaintiff.

35. Defendant SAMC's aforesaid scheme to defraud is accomplished by: 1) refusing to, in any form, provide its confined customers, in include the Plaintiff, with any of the items of the UPKP, which, without caveat, SAMC's advertises as included with the purchase of certain keyboard; 2) by intentionally and maliciously failing to pre-purchase inform said class of customers of SAMC's policy and/or practice of not shipping the UPKP to any PA DOC corrections facility, or to any address; 3) by refusing to, in any manner whatever compensate said customers for the withheld UPKP which, by part or parcel, Defendant ultimately sells to at-liberty customers for the sole monetary gain of Defendant SAMC, without any benefit to said Class, and 4) by selling the UPKP's withheld AC power adapter to the same Class of customers whom could and should have received with their UPKP-eligible electronic keyboard order.

## IV. CLASS CERTIFICATION SOUGHT

36. Plaintiff pro se brings this action, on behalf of himself and all others similarly situated, as a class pursuant to Fed.R.Civ.P. 23; seeking to represent a class, defined as:   <u>Description of Class Membership</u>

> all persons while incarcerated ion the United states who, at any time since 2013 purchased an electronic keyboard from Sam Ash Music Corporation (or affiliate Sam Ash Music Stores) and, per catalog advertisement, was promised an ULTRA PREMIUM KEYBOARD PACKAGE ("UPKP") as included with their purchase, but did not receive any, or not all, of the UPKP's items, or any compensation or credit for the withheld UPKP, or any item(s) thereof.

37. This action is brought and properly may be maintained as a class action pursuant to the provisions of Fed.R.Civ.P. 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3) and satisfy the requirements thereof.

38. **<u>Joinder is Impractical</u>**: Class Membership is so numerous[3] that individual joinder of all Members is impractical. On information and belief, there are, at minimum, 500 persons who have been affected by Defendant's unlawful conduct. The exact number of Class Members and their addresses are presently unknown to the Plaintiff, but may be discoverable from the Defendant's records and books. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, e-mail, internet postings, and/or published notices.

---

[3] The PA DOC has at least 22 facilities with an inmate population comparable to that of SCI-Fayette; which property room records indicate 74 inmate-owned keyboards within the facility. Assuming that each of those 22 facilities average 74 inmates owning a keyboard, the apprised number of UPKP-eligible keyboards in question exceed 500 -- in the PA DOC alone - virtually all purchased from the Defendant which, since 2002, has been the only approved vender from which PA DOC inmates are authorized to purchase a keyboard. Hence, the calculated numerosity of a 500-member Class is a conservative and supportable estimate. Stewart v. Abrams, 275 F.3d 220, 226-27 (3d Cir. 2001)("No minimum number of Plaintiff's required to maintain a suit as a class action, but generally the named Plaintiff must demonstrate that the potential number of Plaintiffs exceed 40, the first prong of Rule 23(a) has been met"); Martinez v. Mecca Farms, Inc., 213 F.R.D. F.R.D. 601, 605 (S.D. Fla. 2001)("The court may make commonsense assumptions in order to support numerosity.").

39. <u>Class Numerosity and Fludidity</u>: As estimated supra, Class Membership is reasonably apprised to exceed 500 Members (in PA alone); exclusively current and former U.S. inmates; which Membership is fluid and expected to fluctuate, as is true of most U.S. Corrections/Prisons systems' inmate populations.

40. <u>Class Definability</u>: The Class is so distinct that such ascertainability permit the Court to determine with certainty who is a Class Member, and who is not.

41. <u>Common Question of Law and Fact</u>: exist as to the Class and the Plaintiff as required by Fed.R.Civ.P. 23(a)(2), and predominates over any question that affect other individual Class members within the meaning of Fed.R.Civ.P. 23(b)(3). The common question of law and fact include, but are not limited to, the following:
   a. whether Defendant unlawfully withheld the UPKP from Plaintiff and the class;
   b. whether Defendant engaged in false advertisement and/or deceptive business practices in maliciously failing to disclose to Plaintiff and the Class that it does not send or otherwise provide its confined customers the UPKP at the facility where they are confined or to any other address;
   c. whether Defendant was unlawfully enriched by selling very same UPKP's AC Adapter to the Plaintiff and the Class who should have, and was permitted to possess same to power their purchased keyboards; and
   d. whether Defendant was unlawfully enriched by keeping and selling Plaintiff's withheld UPKP for sole benefit of Defendant, without any compensation, credit or consideration to the Plaintiff, or to the Class.

42. <u>Typicality of Claims</u>: Plaintiff's claims are typical of those of the class he seek to represent under Fed.R.Civ.P. 23(a)(3) as he and the Class have been subjected to the same wrongful practices and been damaged thereby in same manner.

43. <u>**Class interest will be fairly and adequately protected**</u> as required by Fed.R.Civ.P. 23(a)(4) by Plaintiff who is an adequate representative of the Class as he has no interest adverse to those of the Class, and is fully committed to the vigorous prosecution of this action.

44. A Class action is superior to any other available means for the equitable and efficient adjudication of this controversy, and no unusual difficulty are foreseen to arise in management of this class action. The damages and other financial detriment suffered by the Plaintiff and each Class Member are releatively small compared to the burden and expense that would be faced to individually litigate their claims against the Defendant, so it would be impracticable for each Class Member to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgments, and increased delay and expense to all the parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefit of a single adjudication, economy of scale, and comprehensive supervision by a single court.

45. In the alternative, this action is certifiable under the provisions of Fed.R.Civ.P. 23(b)(1) and/or 23(b)(2), because:
   a. the prosecution of separate action by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish standard of conduct for the Defendant; and
   b. the prosecution of separate actions by individual Lass Members would create a risk of adjudications as to them that would, as a practical matter, be dispositive of the interest of the other Class Members not parties to the adjudications or subsequently impair or impede their ability to protect their interests.

46. Defendant has acted and/or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive relief or corresponding declaratory relief to the Class as a whole and necessitating that any such relief be extended to Class Members on a mandatory class-wide basis.

## COUNT 1
(Violation of 18 U.S.C. §1962, CIVIL RICO ACT)

47. The Plaintiff hereby incorporates by reference all paragraphs of this Complaint, as if fully set forth herein; with particularity set forth at ¶¶ 10-35.

## COUNT 2
(Supplemental State Law Tort Claim of Unjust Enrichment)

48. The Plaintiff hereby incorporates by reference all paragraphs of this Complaint, as if fully set forth herein; with particularity set forth in ¶¶ 10-35.

## COUNT 3
(Supplemental State Law Claim of Replevin)

49. The Plaintiff hereby incorporates by reference all paragraphs of this Complaint, as if fully set forth herein; with particularity set forth at ¶¶ 10-35.

## INJURY

50. The herein described pattern of racketeering activity unlawfully deprived the Plaintiff of his aforesaid property which he exclusively owned upon full and fianl payment of price of said UPKP-eligible keyboard; which tortious, unjust and unreasonable conduct necessitated that the Plaintiff expend $25.94 to the Defendant to acquire his withheld AC keyboard power adapter as Defendant was and is the only PA DOC-approved vender from which the Plaintiff and the Class was allowed to purchase said merchandise.

## REQUESTED RELIEF

WHEREFORE, the Plaintiff hereby request that this Court enter a judgment against the Defendant in favor of the Plaintiff and the Class and award the following relief:

a. Certification of this action as a class action pursuant to Fed.R. Civ.P. 23(b)(1), (b)(2), or (b)(3) on behalf of the Class defined above;

b. Appointment of qualified counsel who are experienced in handling class action litigation on behalf of consumers;

c. Declaration, Judgment and Decree that the conduct alleged herein:

   * Constitutes an unreasonable and unlawful act in violation of 18 U.S.C. §1962; and
   * Unjustly enriched Defendant Sam Ash® Music Corporation;
   * Unlawfully deprived the Plaintiff and the Class of their property;

d. Damages to the Plaintiff and the Class to the maximum extent allowed under state and federal law;

e. Costs and disbursement of the action;

f. Restitution and/or disgorgment of Defendant's ill-gotten gains;

g. Pre- and post-judgment interest;

h. Reasonable attorney's fees; and

i. Such other further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues so triable.

Respectfully submitted,

*Carl Lane*

Dated: March 28, 2018

Carl Lane, Plaintiff
1021 South 4th Street
Suite 1907
Philadelphia, PA 19147
Tel: (215) 389-5888

## DECLARATION

Pursuant to 28 U.S.C. §1746, under penalty of perjury, the undersigned hereby declares that the foregoing Statement of the Facts are true and correct to the best of his knowledge, information and belief.

*Carl Lane*
Carl Lane
Plaintiff, Pro Se

Dated: 3/28/2018

CARL LANE
1021 S. 4th St., Suite 1907
Philadelphia, PA 19147